UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN ANN BELL,

        Plaintiff,              Case No. 1:14-cv-13390
                                    Judge Thomas L. Ludington
v.                               Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**    **REPORT**

        Plaintiff, Carolyn Ann Bell, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying her application for social security disability

insurance benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

14), the Commissioner's cross motion for summary judgment (DE 17), and the administrative record (DE 13).

## A.    Background

Plaintiff filed her application for benefits on February 21, 2012, alleging that she has been disabled since February 21, 2012, at age 51.  R 147-155.[1]  Plaintiff alleges disability as a result of AIDS, Hepatitis C and depression.  R at 165-172. Plaintiff's application was denied initially on May 25, 2012 (R at 77-85, 86, 91-94) and upon reconsideration on September 11, 2012.  R at 87.

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R at 95-97, 98-104, 108-114.  ALJ Oksana Xenos held a hearing on May 3, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Donald Harrison, Ph.D., testified.  R at 37-53.  On May 23, 2013, ALJ Xenos determined that Plaintiff was not disabled within the meaning of the Social Security Act.  R at 19-36.

---

[1] Plaintiff applied for SSI benefits on June 3, 2010.  R at 74.  On September 19, 2011, ALJ Richard L. Sasena issued an unfavorable decision.  R at 59-76.  "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).

On June 11, 2013, Plaintiff requested review of the hearing decision.  R at 16-18.  On July 8, 2014, the Appeals Council denied Plaintiff's request for review. R at 1-8, 9-15.  Thus, ALJ Xenos's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on September 2, 2014. DE 1.

### B.    Plaintiff's Medical History

In this case, Plaintiff alleges that she has been disabled since February 21, 2012.  *See* R at 147-155.  Plaintiff's medical records span the period from December 18, 2010 to January 18, 2013.  R at 200-356 (Exhibits 1F-9F).  Among those the ALJ cited are:

- April 15, 2011 notes of Patricia Brown, M.D. (R at 200-201)
- August 5, 2011 notes of Dr. Brown (R at 202-203)
- August 18, 2011 psychiatric evaluation by Drita Gjelaj, L.L.M.S.W. (R at 204-209)
- October 25, 2011 report of Camille Jeanette Blake, D.O. (R at 263-266)
- March 13, 2012 psychiatric evaluation of psychiatrist Timothy Chapman, M.D. (R at 277-278)
- March 13, 2012 Individualized Plan of Service (IPOS) (R at 279-288)
- April 17, 2012 Case Management Progress Notes of Lillian Hathorne (R at 304)
- April 17, 2012 Individual Progress Notes (R at 305)
- May 7, 2012 report of Cynthia Shelby-Lane, M.D. (R at 253-262)
- May 7, 2012 report of licensed psychologist Nick Boneff, Ph.D. (R at 352-356)
- June 5, 2012 Medical Progress Notes of Dr. Chapman (R at 307)
- June 26, 2012 Individual Progress Notes of Zeinab Zahreidin, L.L.M.S.W. (R at 298-299)

- September 14, 2012 notes signed by Dr. Brown (R at 330-332)
- January 18, 2013 notes of Dr. Brown (R at 328-329)

R at 27-31.  These records will be discussed in detail as required below.

### C.     Hearing Testimony (May 3, 2013)

#### 1.     Plaintiff's Testimony

Plaintiff Carolyn Ann Bell testified at the May 3, 2013 hearing.  R at 40-49.
Plaintiff testified that she has a GED.  R at 41.  Plaintiff has never been married
and does not have any children.  R at 45.  She does not generally get along well
with people.  Plaintiff stated she is "usually a loner[,]" and further stated that she
prefers being alone.  R at 46.

At the time of the hearing, she was just completing a 90 day stay at a shelter.
R at 41-42.  She has no source of income, although in past years she apparently
received assistance from the Department of Human Services (DHS).  R at 44.

The last time Plaintiff worked was from November 2011 through April
2012, when she took care of her sister who had experienced a stroke.  R at 42-43.
Plaintiff stopped, because she could not handle the job.  R at 43.  She is not
currently working.  R at 42.  Plaintiff testified that she could no longer work,
because she tires out really quickly.  She has nosebleeds, sores and diarrhea.  She
is weak, faints when she gets too hot and tends to pass out wherever she is.  R at
44.  When asked about the side effects of her medication, Plaintiff noted diarrhea,
nosebleeds, sores and fainting when warm.  R at 48.

4

Plaintiff usually spends her time watching television. She does not drive; she takes buses occasionally. She goes to church. R at 44. She goes grocery shopping once per month. She does her own laundry. She can sit in one spot for about an hour, and she can stand for approximately 20-30 minutes. She can walk for two blocks before she gets tired. She can climb approximately one flight of stairs, and can lift 10 to 20 pounds. R at 45. Plaintiff's fingers and hands hurt; she described the problem with her grip and noted difficulty with putting on her shoes. R at 45-46.

Plaintiff further testified that she is not on a special diet. She tries to eat at least three meals per day. She fixes her own meals. R at 46. Plaintiff smokes about five cigarettes per day. She does not drink a lot, and she does not use marijuana. R at 47. She apparently gets about four hours of sleep per night. R at 47. She naps during the day, every day, for about 2-3 hours. R at 47-48. Her most comfortable position throughout the day is lying down. R at 48.

Finally, with respect to her memory, Plaintiff testified that she sometimes tends to forget and usually tries to keep a reminder. According to Plaintiff, she is very depressed and often has crying spells. R at 49.

## 2.    Vocational Expert Testimony[2]

The VE also testified.  R at 49-52.  He was asked to assume that the claimant is a 51 year old individual with a GED high-school equivalent education and past work experience who: can perform work at the light exertional level; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, stoop, crouch, and crawl; is limited to unskilled, simple, repetitive, self-paced work with occasional contact with the general public, and with minimal changes in the work setting. VE Harrison testified that there were jobs an individual with that residual functional capacity (RFC) and given profile could perform, in the categories of assembly, sorting, inspecting and cleaning.  R at 50-51.

However, when asked to further assume that, due to frequent episodes of pain, depression, and a combination of other impairments which would cause the individual to be off-task up to 20 percent of the work day and therefore unable to sit, stand, and/or walk a total of eight hours, five days a week, on a regular and continuing basis, VE Harrison testified there were no jobs with that RFC.  R at 51-52.

---

[2] R at 145-146 (Resume), 195-196 (Apr. 18, 2013 Vocational Consultant Case Analysis).

**D.     The Administrative Decision[3]**

ALJ Xenos rendered her decision on May 23, 2013.  R at 19-36.  In so doing, she found there had been a change in Plaintiff's condition since the September 19, 2011 decision.  R at 22.  The ALJ held that Plaintiff had not been under a disability within the meaning of the Social Security Act since February 21, 2012, the date of her application.  R at 23.

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2012, the date of her application.  R at 24-25.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2, the ALJ found that Plaintiff had the severe impairments of asymptomatic HIV, hepatitis C, depression, and antisocial personality disorder, as well as the non-severe impairment of a history of polysubstance abuse.  R at 25.

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R at 25-26.

At Step 4, the ALJ found that Plaintiff had the RFC to perform light work, except that: Plaintiff needs unskilled, simple, repetitive, self-paced work with occasional contact with the general public and minimal changes in the work setting; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, stoop, crouch, and crawl.  R at 26-31.

At Step 5,  having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R at 32.

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis

In her motion for summary judgment, Plaintiff challenges the ALJ's RFC and credibility determinations. DE 14 at 10-16. The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's RFC finding and credibility determinations. DE 17 at 11-23. The Undersigned will address each argument raised within this single, broad issue in turn.

### 1. Substantial Evidence Supports the ALJ's Weighing of Opinion Evidence

"Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Citing *Rogers*, 486 F.3d at 242-243, Plaintiff argues that "[t]he ALJ's failure to give

10

specific reasons and explain precisely how those reasons affected the weight accorded the opinions is a legal error requiring reversal." DE 14 at 11. Yet Plaintiff does not enlighten the Court as to which opinions were improperly weighed. To the extent possible, I will endeavor to guess at the Plaintiff's criticisms.

Plaintiff's only mention of a "treating physician" is accompanied by citations to the September 14, 2012 and January 18, 2013 notes of Dr. Brown (R at 330-332, 328-329). DE 14 at 13. To the extent, if at all, Plaintiff is challenging the ALJ's assignment of weight to Dr. Brown's opinions, the Court notes that Plaintiff was evaluated by Dr. Brown of University Physician Group on at least six (6) occasions. *See* R at 200-201 (April 15, 2011), 202-203 (August 5, 2011), 335-336 (April 6, 2012), 333-334 (May 25, 2012), 330-332 (September 14, 2012) and 328-329 (January 18, 2013).

Within her Step 4 RFC discussion, the ALJ specifically referenced the April 15, 2011, August 5, 2011, September 14, 2012 and January 18, 2013 notes of Dr. Brown. R at 27-28, 30. In fact, the ALJ in part used Dr. Brown's September 14, 2012 notes when *detracting* from Plaintiff's credibility. *See* R at 30, 330-332.[4]

---

[4] Although the ALJ did not reference the May 25, 2012 (R at 333-334) or the April 6, 2012 (R at 335-336) notes, the ALJ need not expressly discuss each piece of evidence in her decision. *Bailey v. Commissioner of Social Sec.*, 413 F.App'x 853, 855 (6th Cir. 2011) ("But [an ALJ] is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must

Rather than failing to accredit Dr. Brown's opinion, the ALJ appears to have placed some reliance upon it.

Moreover, the Court should agree that the ALJ properly explained the weight she assigned to other opinion evidence. For example, the ALJ found that Dr. Chapman's March 13, 2012 opinion (R at 277-278) was not well supported by medically acceptable clinical or diagnostic findings or by the Plaintiff's treatment history. Therefore, the ALJ gave Dr. Chapman's opinion less weight than the State agency Physical Residual Functional Capacity Assessment – presumably the May 25, 2012 assessment of Kathy A. Morrow, Ph.D. (R at 82-84). R at 28.

Also, although Drs. Lane and Boneff are not treating medical sources and their May 7, 2012 opinions (R at 253-262, R at 352-356) are not entitled to controlling weight, the ALJ gave substantial weight to these opinions, noting that the opinions "are well supported by objective diagnostic testing, their trained observations, an impartial analysis of the evidence of record, and well-reasoned conclusions." The ALJ opined that they "documented and attempted to resolve contradictions with input from the claimant and analyzed the claimant's statements

---

contain only 'the findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953); *Kornecky v. Commissioner of Social Security*, 167 F.App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting *Loral Defense Systems–Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir.1999))*.

in view of the claimant's daily activities, history, and previous work experience."
R at 29.

Finally, the ALJ assigned great weight to the May 24, 2012 Physical
Residual Functional Capacity Assessment of Muhammad Mian, M.D. (R at 82-83).
Here, the ALJ explained that, even though she found Plaintiff slightly *more
restricted* than did Dr. Mian, Dr. Mian's evaluation comported well with the
medical evidence of record.  R at 29.

Thus, there is substantial evidence for the ALJ's conclusion that the medical
record failed to support Plaintiff's allegations.  R at 30.

> **2.    Plaintiff has not demonstrated that the ALJ omitted any
> significant physical or mental limitations from her residual
> functional capacity (RFC) finding.**

Plaintiff's RFC is "the most [he or she] can still do despite the physical and
mental limitations resulting from [his or] her impairments."   *Poe v. Comm'r of
Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§
404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved
to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§
404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play
doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of
Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98
F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment ***must*** include:

[A] narrative discussion describing how the evidence supports each conclusion, citing ***specific*** medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. ***The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.***

S.S.R. 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996) (emphasis added).

Here, Plaintiff claims that the ALJ did not comply with the duty "to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  DE 14 at 11.  At various points in her motion, Plaintiff cites *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987),[5] essentially arguing that the ALJ's light work RFC does not "accurately portray" Plaintiff's physical and mental impairments.  DE 14 at 11, 15 & 16.  For example, Plaintiff argues that ALJ Xenos "does not factor in her RFC determination her own previous conclusion that Ms.

---

[5] "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984)).

Bell suffers from the severe impairment of HIV/AIDS, hepatitis C, antisocial personality disorder, and depression." DE 14 at 11.

Mainly, Plaintiff takes issue with what he claims to be *missing* from the ALJ's decision; in other words, Plaintiff claims the ALJ did not comply with SSR 96-8p's narrative discussion requirements. *See* DE 14 at 16.

### a.    Pain, fatigue & diarrhea

Plaintiff states that "[t]he ALJ never discusses the fact that Plaintiff has pain, fatigue, severe diarrhea, and severe medical conditions, which is significant because the ALJ concluded she could perform light work which requires she can walk and lift object[s] for most of the day." DE 14 at 11 (citing SSR 83-10). According to Plaintiff, "[t]he ALJ found HIV and hepatitis C as severe impairments but dismisses the Plaintiff's complaints of severe fatigue." DE 14 at 12. Furthermore, Plaintiff contends the ALJ did not factor or even attempt to factor Plaintiff's severe fatigue, severe pain, need to lie down, or severe medication side effects. DE 14 at 13-14.

The Commissioner correctly observes that the ALJ discussed Plaintiff's pain, fatigue, and diarrhea allegations. *See* DE 17 at 11-13. For example, the ALJ cited Plaintiff's May 3, 2013 testimony that she could no longer work, because she tires out really quickly, has nosebleeds, sores and diarrhea, and faints when she gets too hot. R at 27, 44. The ALJ also acknowledged a June 12, 2011 visit for

nausea, vomiting and diarrhea, at which time Plaintiff had a .125 blood alcohol

level.  R at 27-28, 202-203.  Additionally, the ALJ cited the May 7, 2012 notes of

Dr. Shelby-Lane, which reflect Plaintiff's statement that "she has *occasional*

*episodes* of nausea, vomiting and diarrheal stools, possibly side effects from her

medications."  R at 29, 253-255 (emphasis added).

Moreover, the ALJ concluded that the medical record did not support

Plaintiff's allegations, explaining:

> While the claimant complained of ***daily diarrhea***, on October 25,
> 2011, the claimant denied having any abdominal ***pain***; she had no
> constipation, or blood in her stool.  The claimant reported she was
> doing well ([R at 263-265]).  Within the medical evidence there is
> scant support for excessive nose bleeds or ***fatigue***.  Moreover, the
> claimant alleged that when she gets too hot she passes out.  At her
> appointment of September 14, 2012, the claimant was negative for
> bone/joint symptoms and muscle weakness.  The claimant exhibited
> no unusual anxiety or evidence of depression.  She was negative for
> cold intolerance, heat intolerance, polydipsia, and polyphagia ([R at
> 331]).  Such testimony, without any support in the medical record,
> detracts from the claimant's credibility.

R at 30 (emphasis added).

Thus, not only did the ALJ's RFC assessment (R at 26-31) discussed pain,

fatigue and diarrhea, but also it explains why the claim of daily diarrhea was

discredited.

### b.    Use of transit

Plaintiff takes issue with the extent to which the ALJ relied upon Plaintiff's

use of public transportation, arguing that the ALJ inappropriately decided "that

16

*simply* using the public bus system is proof that Plaintiff is employable in competitive employment" and is "proof that she is not disabled."   *See* DE 14 at 12 (emphasis added).  This argument grossly exaggerates the importance given by the ALJ to this particular, admitted activity, and takes her statements out of context.

The ALJ noted that Plaintiff "was able to use the bus system, consistent with a higher level of functioning and inconsistent with disability."  R at 31.  This observation is supported by Plaintiff's May 3, 2013 testimony that she occasionally takes buses (R at 44) and her May 7, 2012 representation that she takes the bus if she needs to go somewhere (R at 353).  Daily activities are properly considered when evaluating the intensity and persistence of symptoms and determining the extent to which symptoms limit the capacity for work.  20 C.F.R. § 416.929(c)(3)(i).  Moreover, the ALJ did not "hang her hat" on the fact that Plaintiff rides the bus, but only considered it in conjunction with other daily activities as part of the overall, composite picture.[6]

### c.    Medication & side effects

Plaintiff testified that the side effects of her medications include diarrhea every day, nose bleeds, sores and fainting when she gets warm.  R at 48.  Yet, the

---

[6] "The claimant washes her laundry, attends church, goes grocery shopping in stores, and rides the bus." R at 27 (emphasis added). "The claimant was able to care for her daily living activities and was able to use the bus system, consistent with a higher level of functioning and inconsistent with disability." R at 31 (emphasis added).

ALJ opined that "[t]he medical record supports a finding that when the claimant is compliant with taking all of her medications, her symptoms are generally controlled and do not affect her ability to work."  R at 31. The ALJ also stated that "the record fails to indicate any significant side effects from medications, which would further affect the remaining residual functional capacity."  R at 31.

Plaintiff considers this statement conclusory and contends that "[t]he ALJ never attempts to evaluate the medications or make any determination as to whether the medications are the cause of Plaintiff's severe complaints of diarrhea and fatigue."  Plaintiff contends that, if the ALJ had analyzed Plaintiff's medications, the ALJ would have seen that Plaintiff's complaints are consistent with the side effects for Atripla®.[7]  DE 14 at 12.  It is Plaintiff's position that the ALJ did not "give any adequate rationale for rejecting the Plaintiff's complaints about the medication side effects."  DE 14 at 13.  Elsewhere, after citing 20 C.F.R. § 404.1529(c)(3), Plaintiff contends that that the ALJ never discusses the factors of medication side effects (*see* 20 C.F.R. § 404.1529(c)(3)(iv)) or pain symptoms (*see* 20 C.F.R. § 404.1529(c)(3)(ii)), with the exception of the ALJ's sentence rejecting the medication side effects.  DE 14 at 14.

---

[7] "The most common (at least 5%) moderate to severe side effects in patients on ATRIPLA were diarrhea, nausea, tiredness, depression, dizziness, sinusitis, upper respiratory tract infections, rash, headache, trouble sleeping, anxiety, and common cold.  Each of these was reported in less than 10% of patients[.]"  *See* www.atripla.com (last visited June 11, 2015).

As discussed above, the ALJ did discuss Plaintiff's allegations of fatigue and diarrhea.  The ALJ also discussed Plaintiff's allegation of nausea, citing Dr. Brown's August 5, 2011 notes about a June 12, 2011 visit (R at 202) and Dr. Shelby-Lane's May 7, 2012 notes (R at 253).  R at 27-28 & 29.

However, Plaintiff "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  Plaintiff's motion does not support her allegations regarding side effects from medications with citations to objective medical evidence.  *See Farhat v. Secretary of Health & Human Services*, No. 91-1925, 1992 WL 174540, 3 (6th Cir. July 24, 1992) ("Farhat's allegations of the medication's side-effects must be supported by objective medical evidence."); 20 C.F.R. §§ 404.1529(a), 416.929(a) ("By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c).").  It was well within the ALJs fact-finding function, based on the record before her, to find that the alleged side effects were: (a) occasional, as opposed to daily occurrences (R at 29, 253-255); (b) generally controlled when Plaintiff is compliant with taking all of her medications (R at 31); and (c) apparently exacerbated by excessive drinking (R at 27-28, 202-203).

### d.   Homeless

According to Plaintiff, "[n]ever does the ALJ have any discussion as required as to the indigency of Plaintiff and how given the Plaintiff's homeless status affects her ability to stabilize where she is going from night to night; let alone taking her medications." DE 14 at 12.

It appears that Plaintiff's sister put her out for an unknown amount of time after an argument on March 13, 2012 (R at 277). On April 6, 2012, Plaintiff was living with her sister (R at 335). On April 23, 2012, Plaintiff was living at COTS transitional housing, and expected to be there for about 90 days (R at 303; *see also* R at 333). By September 14, 2012, Plaintiff was living in an apartment with a roommate, although when she first moved in is not clear in the record. (R at 330). Also, as noted above, at the time of the May 3, 2013 hearing, Plaintiff had been living in a shelter for approximately 90 days, expected to be there until May 5, 2013, and did not know where she would be afterward (R at 41-42). Thus, the record does provide evidence of at least two 90 day stays in a shelter during the relevant period, although there is no evidence of her spending the evening hours on the street. Nonetheless, Plaintiff does not provide any law requiring these limited periods of homelessness to be factored into her RFC

analysis at Step 4,  explaining how they are supposed to be factored with respect to her "ability to stabilize" or take medications, or should otherwise be considered.[8]

### e.    HIV, hepatitis & alleged hip pain

The ALJ concluded that Plaintiff is <u>asymptomatic</u> for HIV when she complies with taking her HIV medication.  The ALJ also stated that Plaintiff was <u>asymptomatic</u> for hepatitis C.  R at 30.  Here, the ALJ relied upon Dr. Brown's January 18, 2013 notes.  R at 30, 328-329.

Plaintiff asserts that "[t]he ALJ without explanation dismisses the severe impairments of HIV and hepatitis C."  Plaintiff also contests the ALJ's representation that Plaintiff's hepatitis C is asymptomatic (R at 30), taking the position that Dr. Brown repeatedly expressed concern "about Plaintiff's liver and her inability to get treatment due to insurance issues[,]" specifically citing Dr. Brown's September 19, 2012 and July 18, 2013 notes (R at 329, R at 332).  In addition, Plaintiff contends that "[t]he ALJ never evaluates the Plaintiff's severe hip pain which there is significant treatment for in the medical records but is never evaluated by the ALJ in any way[,]" for which Plaintiff points to Dr. Brown's January 18, 2013 notes.  (R at 328).  DE 14 at 13.  Plaintiff contends that "[t]he

---

[8] *See, i.e., Tucker v. Astrue*, No. 08-232, 2009 WL 2922044, 7 (D. Idaho Sept. 8, 2009) (within discussion of error *at Step 3*, "[w]hen reviewing Petitioner's record, it is important to note that Petitioner is homeless and has been living on the streets in Spokane and Coeur d'Alene *for at least seven years*[]. This fact in and of itself suggests a level of limitation with regard to activities of daily living well-above the 'mild' range found by the consultants").

ALJ ought to have provided adequate limitations resulting from the HIV/AIDS

[and] hepatitis C . . . ."  DE 14 at 14.

To be sure, Dr. Brown's January 18, 2013 notes acknowledge that Plaintiff

has pain in her right hip (R at 320) and state, "Patient cannot undergo hep[atitis] C

treatment as she is currently uninsured[,]" R at 329.  Furthermore, notes from the

September 14, 2012 visit state:  "HCV Ab positive in 2010.  HCV quant with HIV

labs.  Likely cause of transaminase elevation.  Will follow and address treatment

needs."  R at 332.

However, whatever the status of Plaintiff's hepatitis C symptoms, the ALJ

did acknowledge Dr. Brown's August 5, 2011 notes that Plaintiff had missed one

month of medications (R at 202) and that Plaintiff's HIV remained clinically stable

(R at 203).  R at 27-28.  The ALJ also acknowledged Dr. Blake's October 25, 2011

notes that the Plaintiff had no complaints and that "last CD4 count was 460 and

viral load less than 48 done in December 2010[,]" (R at 263-266).  R at 28.[9]  The

ALJ further acknowledged Dr. Shelby-Lane's May 7, 2012 notes that Plaintiff: had

a history of HIV disease; has occasional episodes of nausea, vomiting and diarrheal

stools, which are possibly side effects from her medications; and had a history of

hepatitis C, for which she had had blood tests and was being followed by her

_____

[9] Although not expressly discussed by the ALJ, the undersigned acknowledges Dr.
Brown's April 6, 2012 notes, which represent that Plaintiff "[h]as been out of her
meds for a month because she lost her insurance."  R at 335-336.

primary care physician (R at 253).  R at 29.  Furthermore, in support of her

conclusion that Plaintiff's HIV is <u>asymptomatic</u> <u>when she takes her HIV</u>

<u>medication</u>, the ALJ referred to and is supported by Dr. Brown's January 18, 2013

notes that Plaintiff's October 24, 2012 CD4 count was 284 with viral load 20  (R at

328-329).  Moreover, even if the ALJ omitted discussion of Plaintiff's hip pain as

mentioned in Dr. Brown's January 18, 2013 notes, the ALJ did recognize Dr.

Brown's note that Plaintiff no longer needed to ambulate with a cane (R at 328).  R

at 30.   Contrary to Plaintiff's argument, the ALJ neither ignored nor dismissed

these conditions "without explanation."

### f.    Antisocial personality disorder and depression

As noted above, the ALJ's Step 2 findings included the severe impairments

of depression and antisocial personality disorder; accordingly, the ALJ stated that

Plaintiff's severe impairments "cause more than minimal limitations on the

claimant's ability to perform basic work-related activities."  R at 25.

It is Plaintiff's position that "[t]he ALJ ought to have provided adequate

limitations resulting from . . . antisocial personality disorder, and depression."  DE

14 at 14.  This argument is unavailing.  First, in her Step 4 analysis the ALJ

explained, "[t]he claimant may have an antisocial personality disorder; therefore,

the [RFC] assessment provides for only occasional contact with the public[,]"

"[b]ecause of the claimant's depression and personality disorder, all work is to be

unskilled, simple, repetitive, and self-paced[,]" and "[t]he claimant is limited to only minimal changes in the work setting." R at 31. Second, these limitations were taken into consideration and repeated within the RFC statement, in which the ALJ included the limitations of unskilled, simple, repetitive and self-paced work, as well as occasional contact with the general public and minimal changes in the work setting. R at 26-27.

Plaintiff also challenges the ALJ's assessment of Plaintiff's concentration, persistence, or pace. By way of background, within the ALJ's Step 3 consideration of the "Paragraph B" criteria, the ALJ found that "[w]ith regard to concentration, persistence, or pace, the claimant had moderate difficulties." R at 26. Plaintiff submits that "[t]here is no mention in the RFC of the ALJ's findings that Plaintiff has moderate limitations in concentration, persistence, or pace." Plaintiff further argues that the ALJ did not factor in Plaintiff's moderate limitations in concentration into the RFC findings. Furthermore, Plaintiff challenges the "simple, repetitive, self-paced" conditions as non-descript, failing to accurately portray Plaintiff's impairments, and failing to equate into an RFC. Plaintiff argues that the ALJ did not accurately portray Plaintiff's severe mental impairments and concentration problems. Then, Plaintiff argues that "the concentration deficits must be factored."

However, not only did the ALJ assess the foregoing mental limitations, but also the ALJ's Step 4 RFC finding referred to Dr. Boneff's May 7, 2012 report (R at 352-356), which stated that Plaintiff "[d]emonstrated intact capacity to concentrate as evidenced by performance on calculational tasks."  R at 29, 355.

It is a recurring theme in Plaintiff's criticism of the ALJ's decision that she supposedly "over and over again contradicts her own severe [Step 2] impairment findings" in her Step 4 RFC, and that "the RFC is contradictory to her severe impairment findings." *See, e.g.,* DE 14 at 11. As pointed out by the Commissioner and understood by the ALJ, however, "the paragraph B analysis [done at Step 2] addresses *global* limitations, and is broader than the RFC's narrow focus on *work* limitations." DE 17 at 21.  *See Charlton v. Comm'r of Social Sec.,* No. 1:11-CV-992, 2013 WL 5806169, at *8 (W.D. Mich. Oct. 29, 2013) ("It is well established that the paragraph B criteria…are not an RFC assessment.") (citations and quotes omitted).[10]

Finally, while "a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitations in

---

[10] *See also,* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) ("[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

concentration, persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task[,]" "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Smith v. Commissioner of Social Sec.*, No. 13-10862, 2013 WL 6094745, 7-8 (E.D. Mich. Nov. 20, 2013) (Zatkoff, J., adopting report and recommendation of Randon, M.J.).

### g.    Conclusion

Defendant points out that it is the claimant's burden to prove his RFC.  DE 17 at 13, 15, 16; *see* 20 C.F.R. § 416.912(a);[11] *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  Plaintiff has not satisfied his burden to challenge the ALJ's RFC finding.

Even if, as Plaintiff contends, the ALJ omitted discussion of some items, Plaintiff has not shown the omission was harmful.  *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

---

[11] "In general, you have to prove to us that you are blind or disabled."  20 C.F.R. 416.912(a).

In the end, as noted above, the ALJ's light work RFC finding included several limitations (R at 26-27).  The ALJ gave substantial weight to the May 7, 2012 opinions of Drs. Lane and Boneff (R at 29, 253-262, 352-356), within which Dr. Boneff noted that Plaintiff appeared "capable of engaging in work type activities of a relatively high degree of complexity, remembering and executing a multiple-step procedure on a sustained basis with relatively intact capacity for work related judgment and decision making."  The ALJ also gave great weight to the May 24, 2012 Physical RFC Assessment of Dr. Mian (R at 29, 82-83), which noted that Plaintiff could stand and/or walk with normal breaks for a total of approximately 6 hours in an 8-hour workday and could sit with normal breaks for a total of approximately 6 hours in an 8-hour workday.  Additionally, as to Plaintiff's claim that the ALJ does not explain how Plaintiff can lift 20 pounds in her condition (DE 14 at 13), Plaintiff herself testified that she could lift "about 10, 20" pounds (R at 45).

Thus, the ALJ's conclusion that Plaintiff has the RFC to perform light work, except that she "needs unskilled, simple, repetitive, self-paced work with occasional contact with the general public and minimal changes in the work setting; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, stoop, crouch, and crawl[,]" R at 26-27, is supported by the record.

27

### 3.   Substantial Evidence Supports the ALJ's Conclusions with Regard to Plaintiff's Credibility

The ALJ found that Plaintiff was less than fully credible, contending the allegations regarding her limitations were significantly inconsistent with the record.  Specifically, the ALJ noted:

> The claimant is an alcoholic; however, her alcoholism does not more than minimally affect her ability to perform work-related activities. She also intermittently used crack cocaine and marijuana, although she denied doing so at hearing.  The claimant stated that the reason she could not work was because of fatigue, nose bleeds, diarrhea, and "when I get too hot, I passed out." However, these impairments, e*ither separately or in combination, are not disabling*.[12]

R at 30 (emphasis added); *see also* May 3, 2013 hearing testimony (R 44, 48).  The ALJ further stated that Plaintiff "is often noncompliant in taking her medications[,]" explaining as follows:

> When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will not only seek examination and treatment, but also follow her doctor's advice.  The failure of the claimant to seek examination and treatment for the condition and to follow her doctor's advice reflects poorly on the credibility of the claimant and the assertions that the condition is disabling.

---

[12] April 15, 2011 notes indicate that Plaintiff had tested positive for cocaine (R at 200). April 6, 2012 notes indicate that Plaintiff completed a 45 day rehabilitation program for use of crack (R at 335).  Dr. Brown's January 18, 2013 notes indicate that, at some point, Plaintiff was seen at the DMC for the use of crack cocaine (R at 328).  Then, on May 3, 2013, Plaintiff testified that she does not still drink a lot and does not use marijuana.  R at 47.

R at 30.  Noncompliance is a sufficient reason to discount credibility. *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F. 2d 475, 480 (6th Cir. 1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96-7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). As previously noted, Plaintiff argues, in part, that the ALJ's credibility determination does not comply with the SSA's rules and regulations.  DE 14 at 10-16.  Plaintiff takes issue with the insinuation that a lack of compliance with medication on her part suggests her conditions are not disabling and, as noted in an earlier section, takes the position that the ALJ should have accounted for her economic and domestic situation.

However, the Court should conclude, as the Commissioner argues, that the ALJ properly evaluated Plaintiff's credibility.  "In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."  *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.

"Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*.

Contrary to her own representations to medical personnel and to the ALJ, her medical records demonstrate a 2011 urine drug screen which was positive for cocaine (R at 200); a June 12, 2011 blood alcohol level of .125 (R at 202); an April 17, 2012 admission of drinking heavily (R at 304), and a positive test for alcohol and crack cocaine in November 2012 (R at 328).[13]  Moreover, the Commissioner permissibly notes Dr. Boneff's May 7, 2012 impression that Plaintiff could engage in a certain type of work (R at 355), Dr. Mian's May 24, 2012 assessment that Plaintiff's condition was not severe enough to keep her from working (R at 84), and Dr. Morrow's May 25, 2012 notes that Plaintiff "retains the mental capacity to sustain an independent routine of simple work activity."  R at 84.

Additionally, and also contrary to Plaintiff's allegations and testimony, the medical record indicates that she was not cold or heat intolerant on September 14, 2012 (R at 331),  she no longer needed to ambulate with a cane (R at 328),  and she displayed "[n]o unusual anxiety or evidence of depression[,]" on several occasions. R at 329 (January 18, 2013), 331 (September 19, 2012), 334 (May 25, 2012) & 336 (April 6, 2012).  Notes from September 14, 2012 state:  "Two weeks of semi-

---

[13] *See* R 202-203, where Plaintiff denies use of cocaine and alcohol, and R 47, where she denies heavy drinking and use of marijuana.

formed bowel movements 3 times per day which has occurred in the past while taking Atripla and resolved on its own." At the same visit, Plaintiff was negative for fatigue, fever and night sweats. R at 330. Each of these records arguably contradicts or indicates an exaggeration of the complaints made here.

Additionally, Plaintiff testified on May 3, 2013 that she worked from November 2011 through April 2012, when she took care of her sister who had experienced a stroke, and that she earned $4,000 in doing so. R at 42-43. She also testified that she occasionally takes the bus (R at 44), grocery shops once per month, does her own laundry (R at 45), and fixes her own meals (R at 46). The March 6, 2012 function report indicates she has no problem with personal care. R at 174.

Given the totality of the record, the ALJ provided a sufficiently specific explanation for finding that: "[t]he medical record fails to support the claimant's allegations," and "detracts from claimant's credibility" (R at 30); "these symptoms are not entirely credible" (R at 27); and, that "such activity reflects poorly upon [Plaintiff's] veracity . . . ." (R at 31). The Court should conclude, as illustrated in the immediately foregoing paragraphs, that the ALJ's credibility assessment is supported by substantial evidence by way of Plaintiff's medical records, Plaintiff's own testimony and the May 2012 Disability Determination Explanation.

### G.    Conclusion

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

/s/Anthony P. Patti
ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Dated:  June 24, 2015


I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on June 24, 2015, by electronic means and/or ordinary
mail.

s/Holly A. Monda
HOLLY MONDA, in the absence of
Michael Williams
Case Manager